**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ROSE MARIE (FIORE) DIANA,

                                              Plaintiff,

   vs.

                                              6:15-CV-964
                                              (GLS/ATB)

RAYMOND MABIS, Secretary of the
the Navy, et al.,

                                             Defendants.
_____

ROSE MARIE (FIORE) DIANA, Plaintiff pro se

ANDREW T. BAXTER, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

    The Clerk has sent to the court a civil rights complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Rose Marie (Fiore) Diana. (Dkt. Nos. 1, 2).

**I.**   **IFP Application**

    A review of plaintiff's IFP application shows that he declares she is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

    In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II.   Complaint**

Plaintiff has filed her complaint on a form used for civil rights complaints

2

brought by individuals against defendants who act "under color of state law" in violating the plaintiff's federal constitutional or statutory rights. 42 U.S.C. § 1983. The court notes that some of the defendants are federal defendants and some are state defendants. A defendant acting under color of federal law would be liable for federal constitutional claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because plaintiff is pro se, the court will interpret the complaint as raising claims under whatever basis is appropriate without regard to the form-complaint. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

Plaintiff alleges that on July 31, 1944, "on the island of Funifutti," a Pan American ("Pan Am") sea plane, flown by a civilian contractor in World War II crashed into the mast of plaintiff's father's naval ship. (Complaint ("Compl." at ¶ 4, CM/ECF p.2).[1] Plaintiff states that her father was a "witness/survivor." (*Id.*) The only other witness/survivor was a Pan Am employee. (*Id.*) Plaintiff then states that the "negligent decision" to violate her father's Sixth Amendment right to a court martial to "prove causation by Pan Am pilots caused my father to be [labeled an] unreliable witness/perjuror [sic]." (Compl. at ¶ 4, CM/ECF p.6). Plaintiff alleges that this resulted in a "corporate-cover-up and a gag order permanently imposed on [her] father." (*Id.*)

---

[1] The facts in this case are written in paragraph 4 of the form complaint, but the facts take up several pages, many of which are out of order. Plaintiff has also written numbers in the top right-hand corner of some of the pages of the complaint. These numbers do not correspond to the pages of the complaint. The court will cite to paragraph 4, but will also cite to the page of the complaint assigned by the court's electronic filing system "CM/ECF."

3

The "gag order" caused her father mental duress, affecting him throughout his entire life "and his children." (*Id.*) Plaintiff alleges that "this" was "theft" of hers and her father's Sixth Amendment and Fourteenth Amendment right to due process. Plaintiff alleges that this was "criminal behavior, and that Equal Protection was also violated.

Plaintiff claims that the purpose of the "Feris" [sic][2] doctrine was not to support such criminal behavior and the Pan Am was known for its "arrogant" behavior, such as "flying while intoxicated." Plaintiff claims that because the gag order was permanent, her father was unable to obtain "meaningful psychotherapy," and that he was subsequently "slandered and libeled" when the "State Hospital" called him a schizophrenic because the Bureau of Aeronautics did not proceed with a court martial. (Compl. ¶ 4 at CM/ECF pp.6-7).

Plaintiff alleges that she was also slandered by "this" in the City of Utica, because "everyone knew" that her father went to a mental hospital, "which was not accepted by society." (Compl. ¶ at p.7). Plaintiff states that she became aware of these facts in 2008, and immediately requested her "helpless child benefits" from the Veterans Administration ("VA"). (Compl. ¶ 4 at CM/ECF p.8). Plaintiff claims that her "disabilities" resulted from her father's nervous condition and his mandatory medications. (*Id.*) Plaintiff alleges that on August 9, 2009, she was afforded a hearing by the VA in Washington, D.C. regarding her application but was found to be ineligible because she was married. Plaintiff claims, however, that she was not married when she

---

[2] Plaintiff is likely referring to the Feres Doctrine of "intra-military immunity" which bars a law suit under the FTCA for injuries to service people where the injuries arise out of or are in the course of activities which are incident to their military service. *Feres v. United States*, 340 U.S. 135, 146 (1950).

4

was 3-18 years old and "disabled because of the corporate cover-up effects on her father." (*Id.*)

Plaintiff digresses into a story about a bridge collapse in Illinois in which a "skin diver" who was recovering bodies told a news reporter that the gas from the cars mixed with the hydraulic fluid under water and "permeated his wet suit." (Compl. ¶ 4 at p.9). Plaintiff claims that this shows that the VA should not have denied her father his benefits for his permanent skin problem which could have resulted from the plane crash. (*Id.*) Plaintiff alleges that "this" would have resulted in her father obtaining his benefits which would have resulted in plaintiff obtaining her "helpless child" benefits, "caused by [her] father's inability to care for [her] properly" because he was on medication. (Compl. ¶ 4 at CM/ECF p.10).

Plaintiff claims that when she was nine years old, she fell off a bicycle and was permanently injured. (*Id.*) She states that the doctor committed malpractice, but that her father could not help her because he was medicated and under duress because of Pan Am. (*Id.*) Plaintiff also claims that she was also the victim of child abuse and neglect which was caused by the criminal behavior of the VA, the Department of the Navy, Utica State Hospital, and the County of Oneida. (Compl. ¶ 4 at CM/ECF p.11).

However, plaintiff's father was subsequently allowed to become a fireman in Utica, and the Civil Service Commission "knowingly let him work this dangerous job." (*Id.*) Plaintiff suffered child abuse and neglect because of her father's job because he could not "multi-task and do this stressful job and take care of his children's needs," particularly plaintiff's needs because she was handicapped. (*Id.*) Plaintiff alleges that

5

as a pro se litigant, she cannot "do the things required by formality because of [her] disability." (Compl. ¶ 4 at CM/ECF p.12). Plaintiff claims that the "State Appeals" dismissed her claim because she could not perfect her appeal due to disability and that this was a violation of the Americans with Disabilities Act." Plaintiff claims that she should have been afforded the things she needed by the court "such as audio testimony and pro-se assistance." "This" is all a "perpetuation of the original injustices that were bestowed upon [her] father myself and his family." (*Id.*)

Plaintiff has named the following defendants – Raymond Mabis, the Secretary of the U.S. Navy; the VA; Utica State Hospital; the State of New York Civil Service Commission; the City of Utica Civil Service Commission; the County of Oneida Department of Social Services; Pan Am Airlines "and their successors;" the County of Oneida Vet Service Agency; the U.S. Bureau of Aeronautics; the U.S. Department of the Navy; and the VA Hospital in Syracuse, New York.

Plaintiff lists only three "Causes of Action:"

1. Violation of her father's Sixth Amendment trial rights, resulting in a violation of plaintiff's Sixth Amendment rights as his infant child.

2. Violation of both plaintiff's and her father's Fourteenth Amendment due process right to a trial (court martial) and availability of VA benefits for both of them.

3. Violation of the Americans with Disabilities Act by all defendants "as a pro-se litigant."

(Compl. ¶ 5 at CM/ECF p.3). Plaintiff asks for "[j]ustice for the ruination of [her] life"[3]

---

[3] Plaintiff does not indicate what she means by "justice," and she does not specifically ask for any monetary relief.

6

and for her disabilities that developed from "this." (Compl. ¶ 6 at CM/ECF p.4). Plaintiff states that "foremost" she would like to amend her father's VA and State of New York health records. (*Id.*)

The court notes that the facts in this case are very similar to a case that plaintiff brought in the Northern District of New York in 2010, where she was also complaining about the plane crash and the subsequent denial of benefits by the VA. *Diana v. U.S. Navy, et al.*, 6:10-CV-547 (DNH/DEP). After giving plaintiff an opportunity to amend her complaint, U.S. District Judge David N. Hurd dismissed plaintiff's amended complaint with prejudice "for failure to state a cognizable claim pursuant to 28 U.S.C. § 1915(e)(2) (B)." (Dkt. No. 9 in 6:10-CV-547). The Second Circuit Court of Appeals dismissed plaintiff's appeal as "frivolous." (Dkt. No. 15 in 10-CV-547).

In this complaint, although plaintiff has embellished her description of the facts, she is essentially suing over the same issues as she raised in her 2010 case.[4] Now plaintiff also claims that the defendants' actions were "criminal" and fraudulent. Changing plaintiff's statement of the facts will not save her claims. Plaintiff does not state how these actions were "criminal," and she cites no criminal statutes, federal or

---

[4] In his order, Judge Hurd stated that "the essence of [plaintiff's original complaint] seemed to be that the Navy withheld information regarding the plane crash as confidential, thus preventing her father from obtaining veterans' disability benefits, and violating both his procedural and substantive due process rights." (Dkt. No. 9 in 6:10-CV-547). When plaintiff attempted to amend her complaint, she focused on her own application for helpless child's benefits, receiving a hearing in 2009 on the application. (*Id.* at 9-10). Judge Hurd dismissed the amended complaint, which plaintiff brought under the Federal Tort Claims Act. Judge Hurd stated that plaintiff could not avoid the effect of Section 511(a) of the Veterans' Judicial Review Act, which precludes judicial review of a VA determination on a claim for benefits. (*Id.*) In plaintiff's previous complaint, she also stated that she asked the VA "amend" her father's medical records to indicate that his medical problems were "service connected." (Dkt. No. 7 in 6:10-CV-547 at ¶ 30).

7

state. It is well-settled that there is no private right of action under federal criminal statutes such as 18 U.S.C. §§ 241 or 242. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Marshall v. Webster Bank, N.A.*, 3:10-CV-908, 2011 WL 219693, *8 (D. Conn. Jan. 21, 2011) (citing cases).

Plaintiff seeks to hold all the defendants liable based on a "domino effect." Plaintiff claims that because the Navy did not afford plaintiff's father a court martial, he could not prove that Pan Am was at fault for the crash, resulting in the stress and mental illness suffered by her father, resulting in his inability to care for her, resulting in her disability and failure to obtain helpless child benefits. As Judge Hurd stated in his prior decision, plaintiff is still seeking a remedy for the denial of veterans' benefits, but has been told that this court has no jurisdiction to entertain claims relating to veterans' benefits. (Dkt. No. 9 in 10-CV-547) (citing 38 U.S.C. § 511(a); *Pappanikoloaou v. Administrator of Veterans Admin.*, 762 F.2d 8, 9 (2d Cir. 1985) (per curiam); *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1500 (2d Cir. 1992) (§ 511(a) precludes judicial review of non-facial constitutional claims) (collecting cases).

In *Pappanikoloaou*, the Second Circuit specifically held that plaintiff could not circumvent the statute by seeking damages on a constitutional claim arising out of a denial of benefits. 762 F.2d at 9. In this case, plaintiff asserts that her father's Sixth Amendment right to a "trial" was violated, which in turn, violated plaintiff's Sixth Amendment rights as his infant child. (Compl. ¶ 5 at CM/ECF p.3). Plaintiff also alleges a violation of both her and her father's due process rights to "trial (court martial) and availability of VA Compensation for both of us." (*Id.*) It is clear that

8

plaintiff is simply trying a different basis and suing different defendants to obtain what she could not obtain in her prior action. The courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms. *See Melvin v. U.S. Dep't of Veterans Affairs*, 70 F. Supp. 3d 350, 360-61 (D.D.C. 2014) (citing *Pappanikoloaou*, *supra*); *Fahie v. Dep't of Veterans Affairs*, 39 F. Supp. 2d 332, 334 (S.D.N.Y. 1999) (citations omitted).

Adding a variety of other defendants also does not save the plaintiff's complaint.[5] Plaintiff now names Pan Am Airlines (and their successors) as a defendant. Even assuming that Pan Am Airlines was still in existence, or had "successors," there are absolutely no claims stated against the airline, other than the claim that one of Pan Am's sea planes flew into the plaintiff's father's ship in 1944, and plaintiff alleges that Pan Am was known for "flying while intoxicated." Pan Am did not violate plaintiff's rights, constitutional or otherwise. It does not appear that plaintiff was born at the time of the incident,[6] and Pan Am had no responsibility for the denial of plaintiff's father's veterans' benefits. None of the defendants have injured this plaintiff, and other than claiming that all the defendants had something to do with her father's mental illness, there are no specific claims stated against any of the defendants.

Plaintiff claims that her father abused her as a child and attempts to link this

---

[5] In 2010, plaintiff sued the U.S. Navy; the Department of Veterans Affairs; the VA Hospital in Syracuse; and Utica State Hospital (a/k/a Mohawk Valley Psychiatric Center. *Diana v. U.S. Navy*, 10-CV-547.

[6] The amended complaint in 10-CV-547 states that plaintiff was born in 1949. (Dkt. No. 7 in 10-CV-547 at ¶ 12). The court also notes that plaintiff alleged that her mother was granted an "annulment" of her marriage to plaintiff's father in 1956. (*Id.* at ¶ 15).

alleged abuse to conduct by the VA, the Department of the Navy, Utica State Hospital, and the County of Oneida "etc."  Plaintiff also claims that the Civil Service Commission improperly allowed plaintiff's father to become a firefighter, and that this caused further abuse because he could not "multi-task."  Plaintiff does not identify which of her constitutional rights defendants have violated based on these actions.

Section 1983 was enacted to adopt the "common law of torts" to the constitutional context. *Martin v. City of New York*, 793 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) (quoting *Loria v. Gorman*, 306 F.3d 1271, 1287 (2d Cir. 2002)).  Thus, section 1983 employs the principle of proximate causation. *Id.*  Even if a section 1983 defendant's act is the but for cause of some ultimate harm to the plaintiff, the defendant is not legally liable for the harm if an intervening act is a superceding cause that breaks the legal chain of proximate cause. *Id.*  While generally, issues of proximate cause are for the jury to decide, the court may make the determination when the court concludes that a reasonable jury could reach only one conclusion. *Id.* (citation omitted).

In this case, plaintiff claims that all the defendants are responsible for injuries that she experienced because of her father's abuse which resulted because of his mental condition which ultimately resulted from the plane crashing into his naval ship in 1944. No rational jury would find that any of the defendants' actions, whatever they may have been, were the proximate cause of any injury to plaintiff.  Plaintiff even seeks to blame the defendants for her father's failure to care for her after an accident that she sustained on her bicycle when she was nine years old.  Plaintiff claims that she was subjected to medical malpractice, but that her father could not do anything about it because he was

10

medicated and under duress due to Pan Am. (Compl. ¶ 4, at CM/ECF p.10).

After alleging that the State Hospital "slandered" her father, plaintiff also alleges that the State Hospital "slandered" her because the "State Hospital" called plaintiff's father schizophrenic "because the Bureau of Aeronautics didn't proceed with the court marshal." (Compl. at CM/ECF p.7). There is no federal cause of action for defamation, and therefore, this allegation provides an insufficient basis to maintain a section 1983 action.[7] *Townsent v. New York*, No. 14-CV-6079, 2015 WL 4692640, at *9 (E.D.N.Y. Aug. 5, 2015) (citing *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). *See Paul v. Davis*, 424 U.S. 693 (1976) (something more than simple defamation by a state official is required to establish a claim under section 1983).

In addition, the statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff

---

[7] Plaintiff mentions only the State Hospital in connection with her slander/defamation claim. Her caption refers to this defendant as the Utica State Hospital a/k/a Mohawk Valley Psych. Center. The closest basis for a suit against a state actor is section 1983. However, plaintiff may not sue a state entity under section 1983. The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state). Although there is an exception for plaintiff's seeking prospective injunctive relief, it is unclear what plaintiff is seeking from the Utica State Hospital in this case.

11

has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

In plaintiff's 2010 action, she stated that her father died in 2003. It was at that time that she determined that he had received many service-related medals. Plaintiff also stated that she was born in 1949, and thus, is clearly an adult. Whatever causes of action plaintiff may have had against any of the defendants, they accrued many years ago. Plaintiff filed her first action in December of 2010, which was more than five years ago. There is no indiction that equitable tolling should be applied. Any civil rights claim that plaintiff could have had are barred by the three year statute of limitations.

Plaintiff has already appealed Judge Hurd's decision to the Second Circuit, and the court dismissed the appeal as frivolous. To the extent that plaintiff is attempting to re-litigate the claim for veterans' benefits, the claim must again be dismissed for lack of jurisdiction. To the extent that plaintiff raises different or more detailed facts in an attempt to link the defendants' actions to injuries that she suffered during her entire life, the complaint may be dismissed as frivolous and for failure to state a claim.

The court notes that in this complaint, plaintiff alleges that the "State Appeals" dismissed her claim because of her disability and because she could not comply with "things required by formality." (Compl. ¶ 4, CM/ECF at p.13). It is unclear to which appellate court plaintiff is referring. Her Second Circuit appeal was specifically dismissed because "it lack[ed] an arguable basis in law or fact," not because plaintiff was somehow prevented from pursuing her appeal. Plaintiff's attempt to allege that the

court somehow violated her rights under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. is completely conclusory, and she does not name any defendants that are associated with any court.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED** for purposes of filing only, and it is

**RECOMMENDED**, that this action be **DISMISSED IN ITS ENTIRETY**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii-iii) as frivolous and for failure to state a claim, and it is

**RECOMMENDED**, that if the district court adopts this Order and Report-Recommendation, that the district court certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from the district court's order would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 18, 2015

_Andrew T. Baxter_
Hon. Andrew T. Baxter
U.S. Magistrate Judge